IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| SANDLER SYSTEMS, INC.<br>10411 Stevenson Road<br>Stevenson, MD 21153,<br>a Maryland Corporation<br><br>   Plaintiff<br><br>v.<br><br>STEVEN W. CLARK<br>7552 Navarre Parkway<br>Suite 7<br>Navarre, Florida 32566<br><br>   and<br><br>SALES WARRIOR, INC.<br>7552 Navarre Parkway<br>Suite 7<br>Navarre, Florida 32566<br><br>   Defendants | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil No. 04-CV-2613 (JFM) |

\* \* \* \* \* \* \* \* \* \* \* \*

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1.    Plaintiff, Sandler Systems, Inc. ("SSI"), by its undersigned counsel, sues Defendants Steven W. Clark ("Clark") and Sales Warrior, Inc. ("SW"), a Florida corporation whose President is Clark. SW is the successor in 2002 to Clark's corporation Corporate Systems & Solutions, Inc.

2. Clark is a former SSI Franchisee, whose franchise commenced by transfer of the franchise rights to him from another franchisee, effective September 19, 1996. That SSI "Franchise Agreement" was to expire in five years, in 2001, but the franchisee had the right to terminate it upon sixty (60) days written notice to SSI. (See **Exhibit 1** hereto). Clark voluntarily terminated his Franchise Agreement by letter dated October 1, 2000, effective December 1, 2000. Commencing in late 2002, and continuing to the present, Clark, individually and through his company, has engaged and is engaging in willful, blatant violations of SSI's copyrights and SSI's trademark rights, including, but not limited to, engaging in substantial copying and commercial use of copyrighted SSI works in violation of a large number of SSI copyrights, and use of SSI's name and its "President's Club" materials in promoting his business, all years after the termination of his SSI franchise and of his right to use the Sandler name and copyrighted materials. Further, in his deposition taken on June 23, 2005, he admitted to engaging in sales training during the two years after termination of his SSI Franchise Agreement, which constitutes a violation of the post-term non-competition obligation in that Franchise Agreement.

3. In this Second Amended Complaint, SSI sues Clark for breaches of his SSI Franchise Agreement concerning use of SSI's Proprietary Information, copyrights and trademarks, and violation of the post-term non-competition covenant in his SSI Franchise Agreement, and SSI sues both Defendants for willful copyright infringement in violation of 17 U.S.C. §§ 501-05; for willful infringement of SSI's trademark rights, in violation of the Lanham Act, 15 U.S.C. § 1114; for willful federal unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and for malicious common law unfair competition. SSI seeks actual, statutory and exemplary damages and attorney's fees for Defendants' violations of SSI's rights, and permanent injunctive relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1331, in that this is an action arising under one or more of the laws of the United States of America, and further has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1332, in that this is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. This Court also has jurisdiction over the subject matter of this action under and by virtue of 15 U.S.C. § 1121, 17 U.S.C. § 501 and 28 U.S.C. § 1338, in that this is an action arising under an Act of Congress relating to trademarks and copyrights. This Court also has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1338(b), in that this action presents one or more claims of unfair competition that are joined with one or more substantial and related claims under the trademark laws.

6. This Court also has supplemental jurisdiction over the subject matter of the non-federal claims for relief asserted in this Verified Complaint under and by virtue of 28 U.S.C. § 1367.

7. Personal jurisdiction and venue are required exclusively in this judicial District by the mandatory choice of forum provision in Section 14.2 of the Franchise Agreement, a provision enforced last month by the New York Supreme Court. Personal jurisdiction and venue are also independently proper in this District pursuant to 28 U.S.C. § 1400(a), the copyright venue statute, in that each Defendant is found in the District of Maryland. In accordance with the authorities, "found" means that each Defendant is amenable to a long-arm service of process in the District of Maryland. Venue is also independently proper in this District with respect to all Counts pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

8. Plaintiff SSI is a Maryland corporation having its principal place of business located at 10411 Stevenson Road, Stevenson, Maryland 21153.

9. Defendant Clark is a citizen of the State of Florida. His principal place of business is located at 7552 Navarre Parkway, Suite 7, Navarre, Florida 32566. He does business, inter alia, through Defendant SW.

10. Defendant SW, of which Clark is the President and, upon information and belief, the owner, is a Florida corporation. It has its principal place of business located at 7552 Navarre Parkway, Suite 7, Navarre, Florida 32566.

## THE CONTROVERSY

11. SSI was founded and incorporated in Maryland in 1983 by the late David H. Sandler, who created a unique sales strategy and a program of sales education known as the "Sandler Selling System." SSI grew out of David Sandler's original work in sales management and sales training, commencing in the 1960s. SSI is engaged in the business of operating and franchising a distinctive style of training persons in the fields of sales and management, which includes management consulting, goal setting and achievement, motivation, personal development, relationship management, and leadership development and sales techniques, among other subjects, and also the methods of teaching such subjects through seminars and workshops. The Sandler Selling System is the cornerstone of the training provided by SSI, and is taught throughout North America, Europe and Asia by SSI and over 160 franchisees.

12. SSI is the registered owner of the service marks: SANDLER WORKS, Federal Principal Register of the United States Patent and Trademark Office, July 8, 1997, Registration No. 2,077,423 and October 2, 2001, Registration No. 2,494,343; S SANDLER SALES

INSTITUTE (with design), Federal Principal Register of the United States Patent and Trademark Office, May 10, 1994, Registration No. 1,835,750; SANDLER SALES INSTITUTE, Federal Principal Register of the United States Patent and Trademark Office, June 1, 1993, Registration No. 1, 774,492; and S SANDLER SYSTEMS, INC. (with design), Federal Principal Register of the Untied Sales Patent and Trademark Office, December 28, 1993, Registration No. 1,814,148.

13. Since 1983, SSI has spent millions of dollars to develop, promote and market the Sandler Sales Institute and SSI name, logo and marks.

14. As a result of a substantial investment of time, effort and money over decades, David Sandler and SSI created a series of proprietary training materials (hereinafter referred to as the "Training Materials," which are part of SSI's "Proprietary Assets"). These embody its unique sales strategy and approach to training people to sell. SSI sells the Training Materials to its clients and to its franchisees for resale to their clients in connection with workshops and seminars. The Training Materials, all of which were received by Clark during his SSI franchise, include, in part, the following works embodied in a tangible medium of expression, for which SSI has obtained copyright registration, as noted below ("the Copyright Works"):

| TITLE | REG. # | DATE |
|---|---|---|
| Sandler Sales Institute: Sales Workshop | TX 1-477-926 | 12/20/84 |
| Why Salesman Fail | TX 2-696-801 | 12/18/89 |
| Why Salesman Fail | TX 3-065-858 | 3/22/90 |
| Magical People Skills | SR 185-263 | 3/7/94 |
| Why Salesman Fail | TX 3-809-352 | 3/21/94 |
| Sales Strategies for Non-Selling Professionals: Leader's Guide | TX 3-897-661 | 7/26/94 |
| Sales Strategies for Non-Selling Professionals | SR 195-584 | 7/26/94 |
| [Pro Summit] Windshield Training | TX 4-018-525 | 4/5/95 |
| Pro Summit: a selling system to lead you to the top | SR 193-279 | 4/5/95 |
| Pro Summit Manager | SR 208-377 | 4/5/95 |
| Pro Summit: a selling system to lead you to the top [Pro Summit pocket card] | TX 4-042-238 | 4/6/95 |
| President's Club QuickStart | SR 183-925 | 3/25/96 |
| The President's Club QuickStart [Leader's Guide] | TX 4-240-203 | 3/25/96 |

| | | |
|---|---|---|
| Pro Summit [Advanced modules] | SR 226-316 | 8/16/96 |
| President's Club Answer Key | TX 4-433-725 | 12/30/97 |
| Pro Summit Answer Key | TX 4-433-724 | 12/30/96 |
| Pro Summit Advanced Leader's Guide | TX4-451-211 | 1/23/97 |
| How To Qualify, Close & Present | SR 234-662 | 12/30/96 |
| President's Club Pocket Card | TX-4-569-097 | 5/1/96 |
| Best of Sandler | SR-239-255 | 5/5/97 |
| Magical People Skills Leader's Guide | TX4-578-462 | 7/7/97 |
| Strategic Sales Management-Module 1 | TXu-845-512 | 3/18/98 |
| Strategic Sales Management-Module 2 | TXu-844-944 | 3/18/98 |
| Strategic Sales Management-Module 3 | TXu-871-465 | 08/27/98 |
| Strategic Sales Management-Live Training | TX4-830-973 | 10/01/98 |
| Strategic Sales Management, Franchisee Training Audio | PA-917-081 | 11/24/98 |
| Strategic Sales Management, Executive | PA-917-076 | 11/24/98 |

15. In the Franchise Agreement, Clark expressly recognized the benefit to be derived from being identified with and licensed by SSI, and being able to utilize the Sandler System and the Proprietary Assets, including the SSI course materials, promotional materials, techniques, ideas, philosophies, art work, names and marks. (Franchise Agreement, p. 1.) He was granted a non-exclusive Territory in Florida. (Id., ¶ 1.1.) He had the right to solicit clients, and sell and market SSI products, publications, seminars, workshops, and other programs in the Territory. (Id., ¶ 1.3.)

16. In return for a one-time franchise fee and modest monthly service fees, Clark received the above rights, as well as substantial, comprehensive initial training in the Sandler System, subsequent training, opening and operational assistance, merchandising and marketing advice, newsletters, and an initial inventory of materials, which included SSI's Operations Manual, Initial Training Manual, and thirty (30) other publications, in some cases up to 100 copies of key SSI publications concerning sales and sales management under the Sandler System (Id., ¶ 4.1 – 4.4 and Exhibit A). This included the classic You Can't Teach a Kid to Ride a Bike at a Seminar by David Sandler (the "Bike Book").

17. Clark acknowledged in the Franchise Agreement that SSI owned all the Proprietary Assets and goodwill of the Sandler System, and that unauthorized use of SSI's name or marks or Copyright Works constituted a violation of the Franchise Agreement, which would cause SSI irreparable harm, and would entitle SSI to equitable relief, attorneys' fees and costs. (Id., ¶ 5.1.) Upon termination or expiration of the Franchise Agreement for any reason, Clark was required immediately to take all steps necessary to eliminate use of the Sandler names and marks, particularly "Sandler Sales Institute." (Id., ¶ 5.2.)

18. In order to further protect the Sandler System, the Proprietary Assets and the goodwill associated therewith, Clark was required to use the Proprietary Assets and marks only as authorized by SSI. (Id., ¶ 8.4.). And he agreed, in ¶ 12.1(c):

> Franchisee, and persons controlling, controlled by or under common control with Franchisee, shall not, directly or indirectly, without SSI's prior written consent, during the term of the Franchise and at any time thereafter, use any of the Proprietary Assets for any unauthorized purpose; use any confusingly similar method, format, procedure, technique, system, name, trade dress, mark, symbol, emblem, slogan, insignia, term, designation, design, diagram, promotional material or course material; or cause or permit any facility or program to look like, copy or imitate any facility or program operated or licensed by SSI.

19. Clark sent a letter dated October 1, 2000 (**Exhibit 2** hereto), terminating his Franchise Agreement in sixty days. SSI's General Counsel replied on October 13, 2000. Counsel reminded Clark of his post-termination obligations to SSI, including return of materials, furnishing a list of all clients, and other obligations, as well as those under paragraph 12 of the Franchise Agreement concerning, among other things, ceasing use of SSI's Proprietary Assets including its marks, names, and Copyrighted materials. (A copy of this letter is **Exhibit 3** hereto.)

20. Clark then violated his two year post-term non-competition obligation, by engaging in sales training in his former SSI territory, and SSI counsel was required to write him in 2001 and raise the prospect of legal action in order to obtain compliance. Clark falsely assured SSI counsel that he was not violating his non-competition obligation, and, in reliance thereon, SSI took no action against him. In his deposition, in this case on June 23, 2005, he admitted to such violations, however.

21. Notwithstanding the above, Defendants have continuously, systematically, deliberately, and willfully violated SSI's rights in its name, marks and Copyright Works.

22. Upon information and belief, Clark has continued subsequent to his termination to offer SSI sales training, and to use and/or distribute SSI Copyright Works, individually and through his corporation, and to conduct training that closely imitates and uses SSI training, all of which violates his SSI Franchise Agreement and the copyright laws. Of the dozens of SSI Copyright Works identified in the above listing, Defendants have infringed the majority. SSI has copyrighted other works, which are also part of the Training Materials (and included in the Proprietary Assets), which Defendants may be infringing. And SSI has common law copyright rights in other works which Defendants have infringed (the "common law copyrighted works").

23. All of the Copyright Works were authored by SSI, and the copyrights in and to all such works are owned by SSI. As stated above, Clark received and had access to all of the Copyright Works and the common law copyrighted works. Among the statutory copyrighted and the common law copyrighted works infringed by Clark in his sales classes, marketing, and publications are "Sandler Sales Institute, Sales Workshop"; "Sandler Sales System, Sales Workshop"; "The President's Club"; "President's Club Leader's Guide"; "President's Club Quickstart"; "President's Club Quickstart Leaders Guide"; "President's Club Answer Key";

"President's Club (1993) Up-front Contracts Audio Tape Transcripts"; "Qualify, Close, Present Workbook"; "You Can't Teach A Kid To Ride A Bike At A Seminar"; "Quick Start"; "Quick Start Leader's Guide"; "Sales Strategies for Non-Selling Professionals Leader's Guide"; "Pro Summit Answer Key for Pro Summit Advanced Leader's Guide"; "No Guts, No Gain"; and "Why Salespeople Fail."

24.  A Chart, detailing a significant pattern of infringements by Clark in late 2002-2003 in his classes and materials, is **Exhibit 4** hereto.  Another chart, detailing a further significant pattern of infringement by Clark, on the basis of SSI's study of his 2004 "Sales Warrior Memos," is **Exhibit 5** hereto.  Those "Memos" are included in Exhibit 5, after the Chart.  The two Charts depict numerous instances of misappropriation of crucial words, phrases and passages.  Examples in 2002-2003 of Defendants' use of specific SSI words and phrases, or Defendants' minor variations of these but retention of the precise same concept and expression, include their misappropriation of SSI's expressions concerning:

  (a) learning how to look for a "no" instead of a "yes";

  (b) thirty second commercial cold calling;

  (c) the crucial questions for the decision-makers;

  (d) "bonding" and "up-front" agreements;

  (e) the four role players in buyers' decision-making processes;

  (f) "technical" versus "conceptual" selling;

  (g) "It's not how you feel that determines how you act, it's how you act that determines how you feel";

  (h) "You can only perform in your role in a manner that is consistent with how you see yourself";

(i) "Selling is a Broadway show performed by psychiatrist actors…";

(j) "The why is more important than the what";

(k) the "dump is tomorrow's ice cream";

(l) "sell today, educate tomorrow";

(m) "I am financially independent and I don't need the business";

(n) "This problem the prospect tells you about is never the real problem";

(o) "Don't spill your candy in the lobby";

(p) the sales "dance" process;

(q) the prospect's three step process;

(r) near verbatim use of various steps in the sales process;

(s) the 70%-30% allocation of talking between sales person and prospect;

(t) Use of the "Columbo" analogy;

(u) 55%-45% communication ratios and the 7% role of verbal keys;

(v) "You can't get mad at a prospect for doing something you didn't tell them they couldn't do";

(w) "Mutual mystification";

(x) express use of the "Sandler Sales System" name and methods and its "agenda";

(y) use of "pain" and "pain indicators" in the sales process;

(z) the prospect's three responses;

(aa) the "bracketing technique";

(bb) "negative reverse selling";

(cc) the "pendulum" concept; and

(dd) the "positive prospect" as the most "dangerous."

Examples in 2004 include, inter alia, (a) the need to have a "30 second commercial" identifying "pain"; (b) advice against providing knowledge to customers before being paid for it; (c) "why do buyers mislead"; (d) "so what happens next" and gaining an agreement concerning that; (e) avoiding "Think it Overs" by customers; (f) advice that "people buy emotionally" and "justify decisions intellectually"; (g) using the "Negative Sell"; (h) avoiding the "need for approval"; (i) advice that prospects "buy ... for their reasons not yours. Sometimes they buy in spite of your reasons"; (j) advice that "people like to buy from people they are comfortable with"; (k) advice that "it takes three or more questions to get to the pain"; (l) advice that a salesperson's job is to find the pain, who is committed to eliminating the pain, who is willing to pay to get rid of it, and who is in a position to make the decision; (m) advice that salespeople need "to become active listeners"; and (n) the questions to pose to uncover the prospect's "pain."

25.  **Exhibit 6** hereto is the Affidavit of SSI's investigator James Hartley, who attended a 2004 sales training class ("Sales Warrior Seminar") conducted by Clark recently in Navarre Beach, Florida. Hartley recites numerous additional violations by Clark, and attaches documentation confirming these. (Hartley Aff., Exhs. A-B.) For example, Clark's initial sales effort to attract people to invest substantial funds in his continuing sales classes, newsletters and products, was provided to Hartley, and is attached as Exhibit A to his Affidavit. It is a package entitled "Break the Rules...and Close More Sales: Executive Briefing." Similarly, one of SSI's marketing brochures, provided to Clark when he was an SSI franchisee, bears the subtitle "Break the Rules...and Close More Sales." That popular title also appears in other SSI Copyright Works, and is the title of Chapter 5 in the Bike Book. In addition, Sandler trains its franchisees to solicit customers by means of sessions called "Executive Briefing." See SSI documents

collected in **Exhibit 7** hereto. Further, SSI's investigation has disclosed that Clark even states in his sales training classes that he is going to take the Sandler Rules and discuss them and to use the SSI System, making it clear that not only is he infringing SSI's works, but he is still teaching the Sandler System, also in violation of his Franchise Agreement.

26. Hartley's notes, reflecting what Clark stated at the presentation Hartley attended, also reflect Clark's substantial reliance upon SSI materials in his oral presentations. These notes are Exhibit B to Hartley's Affidavit. For example, in SSI's "Quickstart Leader's Guide," on the page dealing with SSI's concept of "Wimp Junction" (**Exhibit 8** hereto), SSI identifies "The Prospect System" as follows:

   1. Mislead (lie)
   2. Unpaid consulting
   3. Mislead again (lie 2)
   4. Do not return phone calls

In his presentation attended by Hartley, Clark, in his infringing "Break the Rules and Close More Sales" document, asked, "what are the four steps of the Prospect's System,?" and Clark advised orally that they were: misleading and lies, "gather information" (i.e., unpaid consulting), "lie still and lie high" and "disappear" (i.e., do not return phone calls) (see Hartley Aff., Exhibit A).

27. Clark advised in his presentation attended by Hartley that "success is mainly based on an individual's belief system. We are making which we believe we are worth… The problems are in your own mind not reality. Thoughts and belief create results based on your actions." (Hartley Aff., Exh. B, pp. 1-2). These statements are further infringements of SSI materials. Thus, SSI's "No Guts, No Gain" Program (a page of which is **Exhibit 9** hereto), states that "you are earning right now exactly what you think you're worth and not a penny more

or less." And, in SSI's "ProSummit," Program, in the section entitled "Correcting Negative Beliefs," excerpts of which appear are **Exhibit 10** hereto, SSI writes:

> Our perception about an experience is just as real for us as the experience. <u>In other words, our perception of reality is reality</u>. And just as we do through real experience, we develop certain beliefs from these perceptions....
>
> <u>The beliefs you develop will be the result of the attitude you have adopted</u>.
>
> This judgment about the appropriate course of action is <u>driven by and will be consistent with your beliefs</u>....
>
> The actions you take will only reinforce your original attitude.

(Emphasis added.)

## COUNT I
## COPYRIGHT INFRINGEMENT

28.     Plaintiff SSI incorporates by reference the allegations of Paragraphs 1 through 27 of this Complaint as if they were set forth in full.

29.     Defendant Clark has knowingly and willfully infringed upon SSI's rights under the copyright laws as set forth in 17 U.S.C. § 106, in violation of 17 U.S.C. § 501, namely SSI's exclusive rights to reproduce its Copyright Works, to prepare or license others for derivative works from the Copyright Works, and to distribute the Copyright Works, as well as under common law.

30.     As a result of their unauthorized use, promotion, sale and distribution of SSI's Copyright Works, Defendants have infringed and exploited SSI's Copyright Works for their own commercial use and gain. Defendants' infringing activities have significantly diluted and

impaired, and continue to dilute and impair, the value of and the potential market for SSI's Copyright Works.

31.   SSI is entitled to damages, injunctive relief, attorney's fees and such other remedies as are provided for by the copyright statutes and the laws of the United States.

WHEREFORE, Plaintiff SSI respectfully prays that this Court enter a judgment against all Defendants:

(a)   Permanently enjoining the Defendants and those in active concert or participation therewith, including but not limited to all printers, publishers, distributors and sellers, in accordance with 17 U.S.C. § 502, from any further infringement of SSI's Copyright Works and Training Materials in any medium, including, without limitation, any materials bearing copyrighted portions of SSI's Training Materials, Copyright Works or Proprietary Assets; and impounding all of SSI's Copyright Works and Training Materials in the possession of Defendants, pursuant to 17 U.S.C. § 503;

(b)   Awarding SSI, in lieu of actual damages and profits, statutory damages based upon Defendants' willful acts of infringement pursuant to 17 U.S.C. § 504(c) (2) in an amount equal of $150,000 per registered copyright violated, i.e., a minimum in excess of $1.2 million;

(c)   In the alternative, if SSI so elects, awarding SSI, in accordance with 17 U.S.C. § 504, damages in an amount to be determined at trial corresponding to SSI's actual damages and Defendants' profits;

(d)   Awarding SSI its allowable costs, including attorneys' fees, in accordance with 17 U.S.C. § 505; and

(e)     Granting such additional and further relief as this Court deems just and proper.

## COUNT II
## TRADEMARK INFRINGEMENT

32.     SSI incorporates by reference the allegations of Paragraphs 1 – 31.

33.     Defendants have engaged in trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.  By using the name Sandler and SSI materials to sell and promote their services, they not only have unlawfully used "confusing similar" marks, they have used the same marks.

34.     SSI seeks actual damages (Defendants' revenues until institution of the equitable relief), and exemplary damages in an amount no less than $500,000 under 15 U.S.C. § 1117, and attorneys fees under the Franchise Agreement, ¶¶ 5.1 and 15.5, under 15 U.S.C. § 1117, and permanent injunctive relief under the 15 U.S.C. § 1116 and the Franchise Agreement.

## COUNT III
## FEDERAL UNFAIR COMPETITION

35.     SSI incorporates by reference the allegations of Paragraphs 1-34.

36.     Defendants have engaged in federal unfair competition in violation of 15 U.S.C. § 1125(a).

37.     SSI seeks the same remedies in equitable relief sought in Count II and seeks all damages awardable to it, in an amount no less than $500,000, together with attorneys fees under the Franchise Agreement, ¶¶ 5.1 and 15.5, and under 15 U.S.C. § 1117.

## COUNT IV
## BREACH OF CONTRACT

38. SSI incorporates by reference the allegations of Paragraphs 1-37.

39. Defendants have breached the Franchise Agreement, ¶¶ 5.1, 5.2, 8.4, 10.3(b), 10.3(d) and 12.1(c), by refusing to cease use and imitation of SSI's name and marks and other Proprietary Materials upon expiration of the Franchise Agreement.

40. SSI seeks actual damages as well as permanent injunctive relief and attorneys' fees pursuant to Franchise Agreement ¶ 5.1 and 15.5, and all damages awardable for these violations until institution of the equitable relief.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

41. SSI incorporates by reference the allegations of Paragraphs 1-40.

42. Defendants have engaged in common law unfair competition with SSI. Their conduct has been knowing, willful and malicious.

43. SSI seeks a permanent injunction to enjoin continued violations of its rights, and attorneys' fees and all damages awardable for these violations until institution of the equitable relief, including punitive damages of not less than $1,000,000.

## COUNT VI
## BREACH OF CONTRACT
## VIOLATION OF POST-TERM NON-COMPETITION COVENANT

44. SSI incorporates by reference the allegations of paragraphs 1-43.

45. Defendant Clark's SSI Franchise Agreement provided in paragraph 12.1(b):

> 12.1 Franchisee, and persons controlling, controlled by or under common control with Franchisee, shall not, directly or indirectly, without SSI's prior written consent:

> (b) For a period of two (2) years following termination or expiration of the Franchise, establish, assist, consult with, participate in or be employed by any enterprise that is or plans to be engaged in the Territory in offering seminars, training sessions, meetings, workshops or other programs, or selling educational materials, involving subject matters that are the same as, similar to or competitive with the subject matters of SSI programs or materials which Franchisee is entitled to sell pursuant to this Agreement.

46. In his deposition, taken on June 23, 2005 in this case, Mr. Clark testified that he had terminated his SSI Franchise Agreement effective December 1, 2000 (Clark Dep., p. 64); that he received a letter in March 2001 from Sandler counsel Elizabeth Borinsky of Venable Baetjer & Howard calling his attention to his two year non-competition obligation (Clark dep., pp. 64-69); and that he responded, denying any violations. (Id. at 67-70.) He stated that this satisfied Ms. Borinsky. (Id. at 67-69.)

47. In fact, however, in his deposition he admitted that, during the entire two year period of the non-compete, part of what he did was to engage in "sales training" in the same territory as he had been an SSI franchisee. (Id. at 65-68.) Engaging in such sales training, which is central to the Sandler System, is a clear violation of the non-compete. Clark nevertheless insisted that he had violated no non-compete because, he (erroneously) said, "Sandler wanted me to do nothing, to which I did not agree...." (Id. at 67.)

48. Clark sought to and did deceive SSI, which took no action against him at the time. Now, with his admission of a violation of the covenant not to compete, SSI seeks a remedy in damages for that period which is still within the statute of limitations.

49. Under normal principles involving franchise covenants, SSI's damages for this breach are the amount of money it would have received from Clark had he remained a

franchisee. This amount is liquidated, because SSI charged a fixed monthly royalty and required a fixed minimum amount of quarterly purchases.

50.    The four year Uniform Commercial Code statute of limitations applies to this Agreement. Hence, the damage period is seventeen months, commencing July 2001, and ending November 30, 2002, the end of the non-compete.

51.    Clark's September 1996 SSI Franchise Agreement provided a required monthly royalty of $1,329 in 2000 when he terminated his Agreement, plus $50 per month for newsletters, and it required quarterly purchases of $1,500. The standard royalty increase was 5% per year. His anniversary month was September. His royalty rate in the year through September 2001 was $1,329 per month. Hence, for July-September 2001, royalties would have totaled $3,987. From October 2001-September 2002, at the 5% increase ($1395 per month), the total would have been $16,740. And from October 2002-November 2002 of the 5% increase ($1,465 per month), the total would have been $2,930. Thus, total royalties would have been $23,557. Total newsletter fees (see above) would have been $850, and total quarterly product purchase requirements were $7,500. (This is only five quarters, and gives Clark two months "free.") Total damages are thus $31,907.00. Further, as alleged above, the SSI Agreement requires that Clark pay SSI's attorney fees in prosecution of this action.

## PRAYER

WHEREFORE, SSI prays that the Court:

a.    grant SSI a permanent injunction against Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of these orders by personal service or otherwise, enjoining continued use of SSI's name, marks, Copyright Works and other Proprietary Information, in

violation of 15 U.S.C. §§ 1114 and 1116 and 1125(a), and 17 U.S.C. §§ 501-02, and in violation of the SSI Franchise Agreement, ¶¶ 5.1, 5.2, 8.4, 10.3(b) and (d), and 12.1(c);

     b.    grant impoundment of all of SSI Copyright Materials and other Proprietary Information in the possession, custody or control of Defendants, under 17 U.S.C. § 503;

     c.    grant SSI statutory (or, if elected, actual) and exemplary damages for all the Defendants' violations of law set forth above, in accordance with 15 U.S.C. § 1117 and 17 U.S.C. § 504 and with common law;

     d.    grant SSI attorneys fees and costs as required by ¶¶ 5.1 and 15.5 of the Franchise Agreement and 15 U.S.C. § 1117, 17 U.S.C. § 505 and Federal Rule 54; and

     e.    grant SSI such other and further relief as may be appropriate.

Dated: July 5, 2005

_____
ALLAN P. HILLMAN
U.S. District Court Bar No. 119
Neuberger, Quinn, Gielen, Rubin & Gibber
One South Street
27th Floor
Baltimore, MD 21202-3282
(410) 332-8542

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of July, 2005, a copy of the foregoing was sent by First Class Mail, Postage Prepaid, to:

    Andrea Leahy-Fucheck, Esquire
    Whiteford, Taylor & Preston, LLP

7 Saint Paul Street, Suite 1400
Baltimore, MD  21202-1626.

_____
ALLAN P. HILLMAN